FILED
08/13/2021
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 5, 2021 Session

**CHRISTINA LYNN MCCARTNEY V. LESTER DALE MCCARTNEY ET AL.**

**Appeal from the Chancery Court for Sequatchie County**
**No. 2420      Melissa T. Blevins-Willis, Judge**

_____

**No. M2020-00703-COA-R3-CV**

_____

This is a divorce case.  Husband/Appellant appeals the trial court's: (1) pre-trial procedural rulings; (2) characterization of certain assets as marital property; and (3) equitable division of the marital estate.  Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Adam U. Holland and Chanse J. Hayes, Chattanooga, Tennessee, for the appellant, Lester Dale McCartney.[1]

Thomas F. Bloom, Nashville, Tennessee and Jennifer A. Mitchell, Dunlap, Tennessee, for the appellee, Christina Lynn McCartney.

**OPINION**

**I. Background**

Appellant Dr. Lester Dale McCartney ("Husband") and Appellee Christina Lynn McCartney ("Wife") were married on August 23, 2000.  No children were born of the marriage.  When the parties married, Husband was working as a general physician, and Wife was working as a pharmacist; the parties earned roughly equal incomes.  The parties entered the marriage with their own individual retirement accounts, and both contributed to their respective retirement accounts throughout the marriage.  The parties participated

---

[1] We note that Appellee Dr. Ronald Lee McCartney, Dr. Lester McCartney's father, joined in his son's brief as allowed under Tennessee Rule of Appellate Procedure 27(j).

in expensive hobbies before and during the marriage. Husband enjoyed flying and owned an ultralight plane while Wife was an equestrian, who owned and cared for several horses. Because the parties appreciated expensive and independent hobbies, they agreed to keep their financial accounts separate so each could enjoy his or her hobby without having to consult the other when spending money on them. Although the parties maintained separate bank accounts, they contributed equally toward household expenses. The parties never executed a prenuptial or postnuptial agreement.

When the parties met, Husband lived in an airstream trailer on his 62-acre farm, and Wife owned a 60-acre farm but did not live on the property. Ten days before the parties married, Husband purchased a modular home for his property and contributed $14,000 as a down payment on the home. After the parties married, Wife moved onto Husband's property, and the parties moved into the new modular home shortly thereafter.[2] In December 2000, Wife sold her 60-acre farm and used a portion of the sale proceeds to satisfy the remaining $52,000 owed on the loan on the modular home. Although it is undisputed that Wife paid this amount, Husband never added Wife's name to the modular home's title.[3] During the marriage, the parties added a barn to the property. The barn housed Wife's horses and also stored various tools and farm equipment, including a John Deere tractor that Wife purchased for the parties' use during the marriage.

In December 2003, Husband filed for legal separation from Wife, but the parties continued living together. On July 1, 2004, the parties entered an order of reconciliation; however, the separation action was never dismissed.

Both parties suffered serious health issues during the marriage. In November 2004, Husband was involved in a plane crash. Due to Husband's significant injuries, Wife took a three-month leave of absence from work to care for him. After five months of hospitalization and rehabilitation, Husband returned to work. However, a few months later, Husband was diagnosed with a pituitary tumor, for which he underwent surgery in May 2006. Husband spent approximately six weeks recovering from this surgery. Despite returning to work later in 2006, Husband worked only limited hours during this time; this greatly reduced his income. It was not until 2008 that Husband's income returned to the level he enjoyed prior to the plane crash.

During this time, Wife developed an addiction to pain medications after she was prescribed them for pain resulting from an improperly inserted intrauterine device. Upon the expiration of her prescription, Wife began stealing these medications from her pharmacy employer and was subsequently arrested for theft. In 2008, Wife's employer terminated her employment. At risk of losing her pharmacy license, Wife surrendered it and participated in a 30-day in-patient rehabilitation program, followed by a 60-day stay at

---

[2] The modular home was delivered to the property a few months after Husband ordered it.
[3] Wife was also never added to the deed for Husband's 62-acre farm.

a sober-living facility. Wife also participated in daily AA meetings for 90 days and submitted to drug screens; she has continued to attend AA and is in recovery. Wife paid for her rehabilitation program with funds she acquired prior to the marriage.

After Husband's health complications, and during Wife's battle with addiction, Husband conveyed his interest in the 62-acre property to his father, Dr. Ronald McCartney ("Dr. McCartney") by deed recorded on November 24, 2008 in the Sequatchie County Register's Office. Despite conveying his interest in the 62-acre property to his father, Husband retained title to the modular home, and the parties continued to reside there.

Despite their health issues, the parties remained married until their separation in November 2014. After separating, Wife moved into a rental home in the area. Although her pharmacy license was reinstated in November 2009, due to her previous thefts and subsequent arrest, Wife was unable to obtain employment at a chain pharmacy (e.g., Walgreens, CVS, etc.). Instead, Wife found employment at small, independent pharmacies. In June 2016, Husband was released from his employment for health reasons and filed for disability benefits. Husband has not returned to work, and his monthly income is derived solely from social security benefits and his commercial disability insurance payments. In August and October 2016, respectively, Wife was involved in an automobile accident and a bicycle accident and suffered injuries that prevented her from working for a period of time. In February 2017, Wife moved from Tennessee to Alabama to live with her sister. Thereafter, Wife bought the house she lived in with her sister, using money she inherited from her father for the purchase. During this time, Wife worked as a pharmacist at a small independent pharmacy until it closed in September 2018. Since its closure, Wife has only been able to obtain employment as a relief pharmacist, working a few shifts per month. To supplement her limited income and cover her expenses, Wife has been making withdrawals from her retirement accounts.

On January 20, 2015, in the Chancery Court for Sequatchie County ("trial court"), Wife filed a complaint for divorce against Husband citing irreconcilable differences and, alternatively, inappropriate marital conduct. Husband filed an answer to Wife's complaint on February 19, 2015. On December 13, 2016, Wife filed a motion to amend her complaint. Despite Husband's objection, the trial court entered an order granting Wife's motion on March 27, 2017. On March 28, 2017, Wife filed an amended complaint, wherein she asked the trial court to set aside Husband's transfer of the 62-acre property to Dr. McCartney as fraudulent. Wife named Dr. McCartney as a defendant in the action. On June 21, 2017, Dr. McCartney filed an answer to the amended complaint, wherein he denied any fraud in the conveyance.[4] The trial court consolidated the parties' 2003 separation action with the pending divorce action. On February 15, 2019, Wife filed a

_____

[4] It appears from the record that Husband never filed an answer to Wife's amended complaint. However, Wife did not file a motion for default judgment against Husband, and the parties continued to litigate the case.

motion to declare the parties divorced. On April 1, 2019, the trial court entered an order declaring the parties divorced. The trial court reserved the issues of division of the marital assets and debts for trial.

After protracted litigation, the case was tried on the 9th, 10th, and 24th of January, 2020. Husband, Wife, Dr. McCartney, and their respective experts testified, and 112 exhibits were entered into evidence. As is relevant to this appeal, by order of March 23, 2020, the trial court found that: (1) Husband's transfer of the 62-acre property to Dr. McCartney was not fraudulent;[5] (2) the modular home the parties resided in during the marriage was marital property; (3) Husband entered the marriage with $187,861.70 in premarital retirement funds that were his separate property; (4) Husband's remaining retirement funds were marital property; (5) Husband's disability benefits received during the marriage were marital property;[6] and (6) the John Deere tractor and StarCraft boat were both marital property. Husband appeals.

## II. Issues

As stated in his brief, Husband raises the following issues for review:

1. Whether the trial court erred by classifying the appreciation of Husband's $187,861.70 held in a 401(k) prior to marriage as marital property.

2. Whether the trial court erred by classifying Husband's long-term disability benefits paid through social security and a private insurance policy as marital property.

3. Whether the trial court erred by designating property as marital property instead of separate property contrary to the intent of the parties.

4. Whether the trial court erred in the equitable division of marital assets and debts by failing to consider the statutory factors of Tenn. Code § 36-4-121 and evidence presented.

5. Whether the trial court erred in concluding that Wife did not dissipate marital or separate property.

6. Whether the trial court erred by consolidating the 2003 separation action with the 2014 divorce proceeding.

---

[5] The trial court subsequently dismissed Dr. McCartney from the action.
[6] In the final order, the trial court found that Husband's social security disability benefits were marital property. The trial court entered an amended order on April 17, 2020, wherein it amended its original order to include a finding that Husband's private disability benefits were marital property.

- 4 -

7. Whether the trial court erred by granting Wife's motion to amend and by failing to rule on Husband's Motion to Strike Argument from Record, Motion to Reconsider, Motion for Sanctions, Motion to Strike Pleadings and for Entry of Default Judgment, and Motion to Disqualify Wife's Counsel.

8. Whether the trial court erred by failing to rule on Husband's motion to compel and motion for scheduling order, quashing Husband's subpoena for financial records prior to trial, and denying Husband's oral motion for continuance.

### III. Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." **Bowden v. Ward**, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness." **Brunswick Acceptance Co., LLC v. MEJ, LLC**, 292 S.W.3d 638, 642 (Tenn. 2008).

### IV. Pre-Trial Procedural Issues

As an initial matter, Husband raises several pre-trial procedural issues, which we address below.

### A. Consolidation of 2003 Separation Action with 2015 Divorce Action

Husband argues that the trial court erred in consolidating the 2003 circuit court separation action with the 2015 chancery court divorce action.[7] Husband alleges that consolidation "allowed Wife to rely on the statutory injunction as a potential bar to the transfer of the [62-acre] property in 200[8] from Husband to [Dr.] McCartney." Even assuming, *arguendo*, that the trial court erred in allowing consolidation of the two cases, such error was rendered harmless on the trial court's finding that the conveyance was not fraudulent. Indeed, Husband's only allegation of prejudice is that he "had to focus litigation resources through discovery and trial on this transfer rather than issues surrounding the classification and division of marital property." We are not persuaded by this argument. Decisions regarding the focus of litigation and the allocation of resources are made in every case and do not constitute a burden or prejudice specific to Husband.

---

[7] Tennessee Rule of Civil Procedure 42.01, provides that, "[w]hen actions involving a common question of law or fact are pending before a court, the court may order all the actions consolidated or heard jointly, and may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay." Tenn. R. Civ. P. 42.01.

Accordingly, there is no reversible error.

**B. Wife's Motion to Amend, Husband's Motion to Strike Argument from Record, Motion for Sanctions, Motion to Strike Pleadings and for Entry of Default Judgment, and Motion to Disqualify Wife's Counsel**

Husband appeals the trial court's grant of Wife's motion to amend and the trial court's alleged failure to rule on several of Husband's motions, including his: (1) motion to strike argument from record; (2) motion to reconsider; (3) motion for sanctions; (4) motion to strike pleadings and for entry of default judgment; and (5) motion to disqualify Wife's counsel. Unfortunately, our ability to review these questions is precluded by Husband's failure to brief the issues.

In the first instance, Husband fails to provide this Court with record citations to any of these pleadings or to the trial court's order(s) on same. Tenn. R. Ct. App. 6(b) (*infra*). More problematic, however, is Husband's failure to include any argument in his appellate brief concerning his contention that the trial court's alleged errors (regarding the above ruling and motions) constitute reversible error. "Rule 6 of the Rules of the Court of Appeals of Tennessee requires an appellate brief to contain a written argument in regard to each issue on appeal, with a statement of the alleged erroneous action of the trial court, as well as a specific reference to the record where such action is recorded." *Clayton v. Herron*, No. M2014-01497-COA-R3CV, 2015 WL 757240, at *2 (Tenn. Ct. App. Feb. 20, 2015) (citing Tenn. R. Ct. App. 6(a)(1)). Specifically, Rule 6 provides that:

> No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Tenn. R. Ct. App. 6(b). Furthermore, Tennessee Rule of Appellate Procedure 27(a)(7)(A) requires an appellant's brief to contain an argument setting forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with . . . appropriate references to the record . . . relied on." Tenn. R. App. P. 27(a)(7)(A).

Husband's failure to provide this Court with record citations and cogent arguments concerning these issues in his brief violate both Rule 6 of the Rules of the Court of Appeals of Tennessee as well as Rule 27 of the Tennessee Rules of Appellate Procedure. It is not the role of this Court to scour the appellate record to find evidence in support of an appellant's arguments, and "appellate courts may properly decline to consider issues that have not been raised and briefed in accordance with the applicable rules." *See Clayton*,

2015 WL 757240, at *3 (quoting ***Waters v. Farr***, 291 S.W.3d 873, 919 (Tenn. 2009)); *see also **Owen v. Long Tire, LLC***, No. W2011-01227-COA-R3-CV, 2011 WL 6777014, at *4 (Tenn. Ct. App. Dec. 22, 2011). Accordingly, these issues are waived.

### C. Husband's Motion to Compel and for Scheduling Order, Subpoena for Financial Records, and Oral Motion for Continuance

Finally, Husband argues the trial court erred when it: (1) failed to rule on his motion to compel and for scheduling order; (2) quashed his subpoena for Wife's financial records; and (3) denied his oral motion for continuance. All three of these issues concern Husband's attempt to obtain certain financial records from Wife. Turning to the record, the trial court declared the parties divorced on April 1, 2019, and reserved its classification and division of marital property for hearing. Shortly thereafter, on July 19, 2019, Husband, acting *pro se*, filed a motion to compel and for scheduling order, wherein he asked the trial court to compel Wife "to provide answers to and/or documents to satisfy the requests for Late Filed Exhibits #5, 8, 25, 36 through 47, 50, 51, 111 and 113 which were called for during her depositions" and remained unanswered. Husband also asked the trial court to "schedule approximately 90 minutes of hearing time well ahead of the final divorce trial" to determine "threshold issues" before proceeding to final trial. Although not stated explicitly in his motion, it appears these "threshold issues" concerned whether certain assets and liabilities should have been classified as marital or separate. On December 30, 2019, after retaining new counsel, Husband served Wife with a subpoena duces tecum, asking her to bring certain documents to court on January 8, 2020. Specifically, Husband asked Wife to provide "up-to-date statements for all financial accounts, including but not limited to, 401k's, pension, bank & savings accounts, etc. showing a balance as of January 1, 2020." On January 8, 2020, Wife filed a motion to quash Husband's subpoena.

The trial court addressed Husband's motions prior to the hearing. Concerning the subpoena, Wife's counsel explained that she had previously provided Husband with all of Wife's financial records through April 30, 2019. Wife's counsel then argued that any of Wife's financial records beyond April of 2019 would be "totally irrelevant" because the parties were divorced at that time. The trial court agreed and sustained Wife's motion to quash explaining that it would value the marital estate by looking "at the date closest to the date of divorce." Accordingly, the trial court concluded that any records concerning Wife's finances after the date of divorce were irrelevant.

Husband's counsel countered that he had been unable to trace Wife's withdrawals from her retirement accounts during marriage because he was allegedly missing documentation. During this argument, Husband's counsel made an oral motion to continue the trial to allow him to obtain these documents. In response, Wife's counsel first argued that she was never informed that Husband was missing this documentation. Additionally, Wife's counsel argued that she previously provided Husband with these records when he was acting *pro se*. Specifically, Wife's counsel explained:

. . . there was a motion when the McCartneys were representing themselves that they didn't have late-filed exhibits. So[,] I had my office go and prepare all the late-filed exhibits. [Husband] came to my office. I had him pick them up. We also put them on a disc. We gave him a disc, and we emailed.

The motion Wife's counsel referenced is Husband's July 19, 2019 motion to compel and for scheduling order. Despite this explanation, Husband's counsel continued to argue that the trial court never addressed Husband's motion. The trial court disagreed. Specifically, it recalled "advising [Wife's] counsel to compile that information and coordinate with [Husband] to make sure all those documents had been exchanged." Further, given Wife's counsel's explanation, the trial court found that Husband had been provided the requested documentation.

Nevertheless, Husband's counsel advanced his continuance argument, insisting he was missing documentation concerning Wife's retirement accounts. Despite this argument, counsel admitted that he was prepared to try the case that day. In denying Husband's oral motion for continuance, the trial court found:

Both of these parties have appeared in front of me several times, sometimes *pro se*, sometimes with counsel. On both sides, it's been changing. At some point in time, this has to come to an end.

***

And this matter was continued – we had it set several months ago. And at that point in time, that's when you were retained to come into the case. And I passed the case until this time to give you ample time to get on board and up to speed on the documents as well. I don't think [Wife's attorney] had been in it too much earlier than you, actually maybe just a few months.

So[,] I think that both of you may have some issues moving forward in terms of conversations with prior attorneys and documents being provided between prior attorneys. But I owe a duty to these parties to put this case to rest, and that's what we're going to do today. So[,] we're going to move forward.

We review pre-trial discovery issues such as the trial court's ruling on Husband's motion to compel and his subpoena for Wife's financial records under an abuse of discretion standard. *See Riley v. Whybrew*, 185 S.W.3d 393, 399 (Tenn. Ct. App. 2005). We review a motion for continuance under the same standard. *See Sliger v. Sliger*, 181 S.W.3d 684, 687 (Tenn. Ct. App. 2005). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42

S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999) (brackets in original).  Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made. *Id.* (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)); *see also* *State v. Gilliland*, 22 S.W.3d 266, 270 (Tenn. 2000).

As discussed, *infra*, Tennessee Code Annotated section 36-4-121(b)(1)(A), defines marital property to include "all real and personal property . . . acquired . . . *during the course of the marriage up to the date of the final divorce hearing . . . .*"  Tenn. Code Ann. § 36-4-121(b)(1)(A) (emphasis added).  Accordingly, any property acquired by either spouse after the date of divorce, here, April 1, 2019, would not be marital property and would not be subject to division by the trial court.  Therefore, the trial court neither erred, nor abused its discretion in quashing Husband's subpoena for financial records that post-date the divorce.

Concerning Husband's July 19, 2019 motion to compel and for scheduling order, it appears the trial court previously addressed this motion.  To the extent Husband argues the trial court abused its discretion by not classifying the parties' assets as marital or separate *before* the final trial, we conclude it did not.  Indeed, the only issues remaining for final trial were the trial court's characterization and division of the marital estate.  Accordingly, it was not error for the trial court to hear these issues concurrently.

Finally, we conclude that the trial court's denial of Husband's oral request for continuance the day of trial was not an abuse of discretion.  The record shows that the case had been pending for approximately five years at the time of the hearing.  Furthermore, Husband requested a continuance to obtain certain documents, which Wife had already provided him.  In short, there was no necessity for a continuance, and Husband was not prejudiced by denial of his request.  As such, the trial court did not abuse its discretion in denying Husband's motion.

## V.  Division of the Marital Estate

Husband raises several issues under the umbrella of property division.  We address each below.

### A.  Property Classification

"Tennessee is a 'dual property' state, as our divorce statutes distinguish between marital and separate property."  *Glover v. Glover*, No. W2010-00331-COA-R3-CV, 2010 WL 2977922, at *3 (Tenn. Ct. App. July 30, 2010) (citing *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988)).  Accordingly, a trial court's classification of assets as either marital or separate is "an important threshold matter because courts do not have the authority to make a distribution of separate property."  *Summer v. Summer*, 296 S.W.3d

57, 60 (Tenn. Ct. App. 2008).  Concerning this issue, this Court has explained that

> "[q]uestions regarding the classification of property as either marital or separate, as opposed to questions involving the appropriateness of the division of the marital estate, are inherently factual." ***Owens* [*v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007)]** (citations omitted).  As such, we employ the familiar standard of review outlined in Rule 13(d) of the Tennessee Rules of Appellate Procedure. ***Bilyeu v. Bilyeu***, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005).  "As a general rule, assets acquired by either spouse during the marriage are presumed to be marital property." ***Owens***, 241 S.W.3d at 485 (citations omitted).  Moreover, when a spouse seeks to assert that an asset acquired during the marriage is separate property, he or she bears the burden of proving that fact by a preponderance of the evidence. ***Id.*** at 485-86 (citations omitted).

***Bewick v. Bewick***, No. M2015-02009-COA-R3-CV, 2017 WL 568544, at *7 (Tenn. Ct. App. Feb. 13, 2017).  Tennessee Code Annotated section 36-4-121 governs a court's: (1) classification of property as either marital or separate; and (2) equitable division of the marital estate (discussed *infra*).  We note that the Tennessee General Assembly has amended this statute several times since Wife filed the complaint for divorce on January 20, 2015.  In this appeal, we note that the relevant iteration of the statute is the July 2014 through June 2015 version, which was in place at the time Wife filed her complaint for divorce.  At that time, Tennessee Code Annotated section 36-4-121(b)(1) defined "marital property," in relevant part, as follows:

> (A) . . . all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce. . . .
>
> (B) . . . income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.
>
> (C) . . . recovery in personal injury, workers' compensation, social security disability actions, and other similar actions for the following: wages lost during the marriage, reimbursement for medical bills incurred and paid with marital property, and property damage to marital property.

Tenn. Code Ann. § 36-4-121(b)(1).

At the time of the filing of the complaint for divorce, Tennessee Code Annotated section 36-4-121(b)(2) included, as "separate property,"

(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts . . .;

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent;

(E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and

(F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tenn. Code Ann. § 36-4-121(b)(2).

In addition to the statutory definitions, Tennessee courts have recognized two methods by which separate property may be converted into marital property, i.e., commingling and transmutation, to-wit:

[S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur. . . . [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. . . . The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002) (brackets and ellipses in

- 11 -

original) (citations omitted).  With the foregoing in mind, we turn to address the trial court's classification of certain assets as marital property.

### 1.  The Parties' Alleged Agreement

Before addressing the trial court's classification of certain assets, we address Husband's primary argument at trial:  that the parties entered into an alleged oral agreement prior to marriage that they would live financially independent lives and keep their assets and debts separate during the marriage.  Based on this alleged agreement, Husband argued that any assets held in his name (e.g., the modular home, bank accounts, retirement accounts, etc.), and any assets he purchased during the marriage (e.g., farm equipment, other personal property) should be awarded to him as his separate property.  It is undisputed that, although the foregoing assets were titled to Husband alone, he used marital income to purchase them.  Furthermore, as noted above, the parties did not execute any premarital or postnuptial agreement outlining this alleged agreement.

In rejecting Husband's argument, the trial court explained:

> . . . Dr. McCartney, you were so entrenched in your beliefs in the way that you thought the divorce should be fashioned that you lost sight of what the [c]ourt has to consider under Tennessee law, specifically, the cases and the statutory authority.  And as the opening statements were made and the testimony progressed, I specifically posed questions to you and your counsel about the law in the State of Tennessee and was provided nothing to support your contention that 36-4-121, which contains the definition of marital property, should not be applicable to this case.  There was argument about some sort of, for lack of a better way to put it, oral prenup, but there's no foundation and law to support that.

On appeal, Husband argues that the trial court "improperly classified property contrary to the clearly established intent of the parties for [all] property to be the separate property of the purchasing party."  Notably, Husband presents no Tennessee law to support his position, and our research has revealed none.  Nonetheless, even assuming, *arguendo*, that Husband's argument has merit, Wife's testimony and, indeed, the record as a whole contradict Husband's allegations that the parties lead financially independent lives.  Although Wife admitted that the parties kept separate bank accounts, she also testified that they shared expenses equally during the marriage.  For example, Wife testified: "I would pay . . . the phone bill.  He would pay for the fax line.  I paid for the vehicle insurance.  He paid for the property insurance."  The record further shows that at the beginning of the marriage, although Husband was able to work full-time, he chose not to and instead performed "contract labor," for which he received no benefits.  During this time, Wife worked full-time and provided both parties with the health insurance Husband relied on after his plane accident and again when he had brain surgery.  Conversely, later in the

marriage, after Wife's employment was terminated, Husband provided health insurance to both parties through his employment. These examples clearly demonstrate that the parties worked in partnership, rather than separately, and each contributed financially to the marriage.

From our review, Husband failed to proffer sufficient evidence to support his argument that the parties intended the property each acquired *during the marriage* with *marital funds* to remain their respective separate property. In short, the record clearly supports the trial court's conclusion that the disputed assets were marital assets under the statutory definition of same or by virtue of transmutation or commingling. We now turn to address the trial court's classification of assets.

## 2. Appreciation in Value of Husband's Retirement Funds

In its final order, the trial court found that the combined value of Husband's retirement accounts prior to marriage was $187,861.70 and designated this sum as his separate property. Neither party disputes this finding. The trial court found that the remaining funds in Husband's retirement accounts were marital property and awarded Wife one-half of this amount through April 2019, when the trial court declared the parties divorced. Specifically, the trial court found that

[t]he testimony supported that Husband continued . . . to contribute to these accounts during the marriage. And the only source of those funds, based on the testimony offered, in terms of the contributions, were from his earnings. Therefore, those were marital funds; so[,] any excess over the $187,000 amount . . . will be divided equally.

On appeal, Husband argues that the trial court erred when it classified the *appreciated* value of his $187,861.70 premarital retirement assets as marital property. Notably, Husband provides no numerical value for this alleged appreciation; he merely argues that his premarital retirement assets increased in value and that "[t]he increase in Husband's separate property was primarily due to market gains, capitalization, and appreciation on funds held prior to marriage, not Husband's contributions of wages during marriage." Husband further argues that "[t]he [trial] court made no efforts to utilize any reasonable method of accounting to attribute post marital appreciation to the value of Husband's premarital IRA sum."

In support of his argument, Husband relies on the current version of Tennessee Code Annotated section 36-4-121(b)(1)(iii), which provides:

(iii) **The account balance, accrued benefit, or other value of vested and unvested pension benefits, vested and unvested stock option rights, retirement, and other fringe benefits accrued as a result of employment**

**prior to the marriage, together with the appreciation of the value, shall be "separate property." In determining appreciation for purposes of this subdivision (b)(1)(B)(iii), the court shall utilize any reasonable method of accounting to attribute postmarital appreciation to the value of the premarital benefits, even though contributions have been made to the account or accounts during the marriage, and even though the contributions have appreciated in value during the marriage**; provided, however, the contributions made during the marriage, if made as a result of employment during the marriage and the appreciation attributable to these contributions, would be "marital property." When determining appreciation pursuant to this subdivision (b)(1)(B)(iii), the concepts of commingling and transmutation shall not apply;

Tenn. Code Ann. § 36-4-121(b)(1)(iii) (2017) (emphasis added). Notably, the Tennessee General Assembly did not include this provision in the statute until July 2015, and it was absent from the version that was in effect when Wife filed for divorce in January 2015. As discussed, *supra*, the statutory provision in effect when Wife filed this suit includes as "marital property:"

(A) . . . all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce. . . .

(B) . . . income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

Tenn. Code Ann. § 36-4-121(b)(1)(A), (B). The relevant version of the statute also includes, as "separate property," "[i]ncome from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1)." Tenn. Code Ann. § 36-4-121(b)(2)(C).

Here, the version of the statute applied is not dispositive because there is no evidence in the record concerning the appreciation in value of Husband's premarital retirement funds. Although Husband criticizes the trial court for not employing a "reasonable method of accounting" to determine the post-marital appreciation value of his premarital retirement funds, it was not incumbent on the trial court to do so. Rather, it was Husband's burden to provide the trial court with evidence concerning the appreciation of his retirement accounts. Husband failed to meet this burden. Although the record shows

that Husband entered the marriage with $187,861.70 in premarital retirement funds, during the marriage, Husband rolled the entire $187,861.70 with his Fidelity IRA and Vanguard Individual Brokerage Account, both of which he opened during the marriage. There is no evidence concerning the date on which Husband deposited funds into each account, nor is there evidence of the specific amounts deposited into each account. Concerning the $187,861.70, Husband testified:

> **WIFE'S ATTORNEY:** And you acknowledge that, at the date of the marriage, your retirement accounts were 187,861.70; is that correct?
>
> **HUSBAND:** That's my belief, that that's as close as one can get to what they were.
>
> **WIFE'S ATTORNEY:** And you're not an accountant, correct?
>
> **HUSBAND:** That's correct.
>
> **WIFE'S ATTORNEY:** And you've not done any market valuations as to – you're not able to tell me what the market's done year to year from 2000 to 2020, are you – or 2019, when you were divorced?
>
> **HUSBAND:** What I will say is I have managed my own monies since the year 1990. I've been in the stock market and in and out of various investments with various different brokers. There's been many times when I've managed, you know, sizable amounts of money on my own. So, yeah, I think I have a pretty good idea of how the market works.

As evidenced by Husband's own testimony, there is no record concerning whether or how much market forces increased the value of Husband's premarital retirement funds.

Husband's only "proof" that the alleged increase in these retirement funds was due primarily to market gains was his testimony that he did not consistently contribute to his retirement accounts during the marriage. According to Husband, because he did not consistently contribute to these retirement funds, any increase in value was attributable to market forces rather than marital income. However, there is evidence that Husband made contributions, from marital funds, to these accounts. When asked at oral argument before this Court whether there was proof in the record concerning the total amount Husband contributed to these retirement accounts during the marriage, Husband's attorney admitted that there was no specific amount articulated at trial. However, upon review of Husband's testimony on cross-examination, it appears that he admitted to depositing *at least* $75,000.00 in marital funds into his Vanguard Individual Brokerage Account and $127,493.00 in marital funds into his Fidelity IRA, for a total contribution amount of *at*

- 15 -

*least* $202,493.00 in marital funds into these two accounts. Thus, it is clear that marital funds were deposited into these accounts.

At the time of trial, Husband's Vanguard Individual Brokerage Account was valued at $232,433.90 and his Fidelity IRA was valued at $401,344.66 for a combined balance of $633,788.56. As discussed, *supra*, Husband rolled his premarital retirement funds of $187,861.70 into the Vanguard Individual Brokerage Account and the Fidelity IRA, although it is unclear how much was rolled over into each account. Nevertheless, if one subtracts the $187,861.70 of Husband's premarital funds from the combined balance of $633,788.56, the remaining balance for both accounts is $445,916.86. Although Wife was able to show that Husband deposited *at least* $202,493.00 in marital funds into these retirement accounts during the marriage, there was no evidence as to how the remaining $243,423.86 accrued. Having opened both of these accounts during the marriage, it was presumed that the funds within these accounts were marital property, unless Husband proved otherwise, which he failed to do. *See **Bewick***, 2017 WL 568544, at *7 (citing ***Owens***, 241 S.W.3d at 485-86). In short, Husband's contribution of $187,861.70 into these accounts opened during the marriage can be traced to his separate property; thus, the trial court correctly awarded this amount to Husband as his separate property and also correctly designated all appreciation in the Vanguard and Fidelity accounts as marital property. ***Langschmidt***, 81 S.W.3d at 747.

We also note that the Vanguard Individual Brokerage Account and the Fidelity IRA are only two of Husband's five retirement accounts that the trial court divided between the parties. Our review focused on these two accounts because Husband rolled his premarital retirement funds into these accounts only. Husband opened the remaining three accounts during the marriage and funded them entirely with marital income. On appeal, Husband briefly argues that Wife should not be entitled to any funds within these accounts because the parties allegedly agreed to live financially independent lives. However, as discussed, *supra*, that argument is not persuasive. Husband simply offered no proof to show that these funds should be classified as his separate property. Accordingly, we conclude that Husband failed to meet his burden to show that his retirement funds, acquired during the marriage, were his separate property. *See **Bewick***, 2017 WL 568544, at *7 (citing ***Owens***, 241 S.W.3d at 485-86). For these reasons, we affirm the trial court's division of the retirement accounts.

### 3. Modular Home

The trial court classified the parties' modular home as marital property and awarded Wife the $52,000.00 she had invested in the home as her interest in this marital asset. On appeal, Husband argues that the trial court should have classified the modular home as his separate property. Because Husband purchased the modular home before the parties married, it was initially his separate property. *See* Tenn. Code Ann. § 36-4-121(b)(2)(A). However, as discussed, *supra*, Tennessee courts have recognized two methods by which

separate property may be converted into marital property, i.e., commingling and transmutation. Relevant here, this Court has explained that

> "[[t]ransmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property." ***Snodgrass v. Snodgrass***, 295 S.W.3d 240, 256 (Tenn. 2009) (quoting [***Langschmidt***, 81 S.W.3d at 747)]. In determining intent, "the ultimate test is how the property was treated by the parties." ***Strickland v. Strickland***, No. M2012-00603-COA-R3-CV, 2012 WL 6697296, at *17 (Tenn. Ct. App. Dec. 21, 2012). Factors include (1) the use of the property by the family or to support the marriage; (2) shared control, maintenance, or management of the property; (3) titling the property jointly; and (4) use of the non-owner spouses' credit or separate funds to pay for or improve the property. ***Luplow v. Luplow***, 450 S.W.3d 105, 114 (Tenn. Ct. App. 2014) (quoting [***Fox v. Fox***, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *3 (Tenn. Ct. App. Sept. 1, 2006)]); 2 John Tingley and Nicholas B. Svalina, Marital Property Law § 42:30 (2d ed.); *see also* ***Woodward v. Woodward***, 240 S.W.3d 825, 829 (Tenn. Ct. App. 2007) (use as marital residence); ***McClellan v. McClellan***, 873 S.W.2d 350, 352 (Tenn. Ct. App. 1993) (intent to use as permanent family home); ***Kincaid v. Kincaid***, 912 S.W.2d 140, 142 (Tenn. Ct. App. 1995) (use of marital and non-owner spouse's funds).

***Anderson v. Anderson***, No. M2018-01248-COA-R3-CV, 2019 WL 3854663, at *5 (Tenn. Ct. App. Aug. 16, 2019). As the proponent of transmutation, Wife had the burden of proof at trial. ***Nesbitt v. Nesbitt***, No. M2006-02645-COA-R3-CV, 2009 WL 112538, at *9 (Tenn. Ct. App. Jan. 14, 2009).

Turning to the record, Husband testified that he ordered the modular home ten days before marrying Wife in August 2000. At the time of purchase, Husband contributed approximately $14,000.00 as a down payment on the home and financed the remaining balance. Wife testified that the modular home was delivered in October or November 2000, and the parties began living in it in December 2000. It is undisputed that on December 11, 2000, Wife used $52,000.00 of her separate funds to satisfy the remaining debt on the modular home. It is also undisputed that the modular home was the parties' sole marital residence. Testimony elicited from the parties also shows that both Husband and Wife maintained and improved the modular home. For example, Wife testified that, during the marriage, the parties installed a septic system in preparation for the modular home's delivery. Wife also testified that, during the marriage, the parties built an extra bedroom, a sunroom, and a two-car garage onto the modular home, and both parties contributed financially to these improvements. The record further shows that Wife purchased furniture for the home.

- 17 -

On appeal, Husband does not specifically dispute Wife's contributions to the modular home. Rather, he makes several arguments as to why her contributions do not constitute transmutation. First, Husband argues that Wife's $52,000.00 contribution toward the modular home was a gift from Wife to him; as a "gift," Husband maintains that the $52,000.000 was his separate property. Alternatively, Husband argues that, even if not categorized as a "gift," Wife's "contribution transmuted into Husband's separate property." As discussed, *supra*, transmutation occurs when separate property "is treated in such a way as to give evidence of an intention that it become *marital property*." **Snodgrass**, 295 S.W.3d at 256 (quoting **Langschmidt**, 81 S.W.3d at 747) (emphasis added). Separate property that is treated in such a way as to give evidence of an intention that it become the other spouse's separate property is merely a gift from one spouse to another and not transmutation. In support of his argument that Wife gifted him $52,000.00, Husband relies on *his* testimony that Wife came to him "out of the blue voluntarily" and told him she wanted to help with the debt on the modular home. Husband categorized Wife's action as "an expression of gratitude on her part for the things" Husband had done for Wife over the previous six months. There is no corroborating evidence in the record. However, even taking Husband's testimony as true, Wife's "expression of gratitude" does not, *ipso facto*, demonstrate her intent to simply give Husband $52,000.00. More realistically, it evinces Wife's intent to contribute to the marital home.

Husband also argues that the modular home remained his separate property because Wife's name was never added to the title. As discussed, *supra*, whether property is titled in a spouse's name is only one factor that courts consider in determining whether parties treated separate property as marital property. *See **Anderson***, 2019 WL 3854663, at *5. Accordingly, this fact alone does meet Husband's burden to show that the modular home was his separate property.

Husband's third argument directly contradicts his previous argument that the $52,000.00 was a gift. Husband avers that he repaid Wife "all, if not a substantial portion" of the money. Thus, according to Husband, the trial court's $52,000.00 award to Wife was improper because he repaid this amount. As an initial matter, the trial court's $52,000.00 award did not represent reimbursement to Wife for Wife's satisfaction of the debt on the modular home. Rather, it represented Wife's interest in this piece of marital property. Regardless, there is no proof in the record to support Husband's contention that he repaid the $52,000.00. In fact, when the trial court pressed Husband concerning his repayment, Husband testified:

> **TRIAL COURT:** Okay. So[,] with regard to – I believe the testimony was the she paid 56,000 and that you gave her 36,000.
>
> **HUSBAND:** No. She paid 52,600. And over the course of – from there until 2013 – actually, when I went back and added all of the records of the checks that I paid to her benefit or directly to her, it added up to 53,000 and

- 18 -

change.

> **TRIAL COURT:** Okay. But which checks specifically were for the modular home?
>
> **HUSBAND:** *It was all a give-and-take*. . . .
>
> **TRIAL COURT:** There's really no way to know?
>
> **HUSBAND:** I never specifically made an entry on the memos of a check to say, "Well, this is what it's for," or whatever.

(Emphasis added). Clearly, Husband was unable to prove that he reimbursed Wife for the $52,000.00. Rather, Husband's testimony belies his contention that the parties intended the modular home to remain Husband's separate property.

We note that, in his reply brief, Husband briefly argues that the modular home depreciated in value during the marriage. Husband contends that Wife should share the burden of the depreciation, and, as such, the trial court erred in awarding her the full $52,000.00 contribution. Although Husband offered evidence at trial that modular homes generally depreciate at a faster rate than traditional homes, he failed to offer any evidence as to whether, or by how much, *this* modular home depreciated during the marriage.

From our review of the record, it is clear that: (1) the parties used the modular home as their marital residence; (2) the parties shared in maintaining and managing the property; and (3) Wife paid $52,000 in separate funds toward the property. *See Anderson*, 2019 WL 3854663, at *5. Although Wife's name was not on the title, the evidence shows the parties treated the modular home as marital property. Consequently, Wife met her burden to show that the modular home was transmuted into marital property. *Id.*; *Nesbitt*, 2009 WL 112538, at *9. Furthermore, Husband's arguments that Wife gifted him the $52,000.00 and/or that he repaid her are simply not supported by the evidence. Finally, in the absence of evidence concerning the modular home's alleged depreciated value, we cannot conclude that the trial court erred in awarding Wife $52,000.00 as her marital interest in the property.

### 4. Disability Benefits

Husband argues that the trial court erred in classifying a portion of his disability benefit proceeds as marital property.[8] Concerning these benefits, the trial court explained that

---

[8] Although Husband's statement of the issues mentions social security disability benefits, the only issue on appeal concerns Husband's private disability policy.

- 19 -

[m]arital property is defined to include those funds from a disability action due to lost wages during the marriage. Proof established that [H]usband filed for . . . the disability benefits and received the same during the marriage.

Accordingly, the trial court found that $78,000.00 of Husband's disability benefit payments constituted marital property; the trial court awarded Wife thirty-five percent (35%) of this amount.[9]

In support of his argument that the disability payments he received during the marriage were his separate property, Husband relies on the Tennessee Supreme Court case *Gragg v. Gragg*, 12 S.W.3d 412 (Tenn. 2000). In *Gragg*, the Tennessee Supreme Court discussed the classification of disability payments in the context of divorce. Importantly, as explained by the Court, at the time of the *Gragg* decision, Tennessee had no statute "that either specifically designate[d] disability benefits as marital property or specifically exclude[d] such benefits from the definition of marital property." *Id.* at 416. In the absence of a statutory framework, the Tennessee Supreme Court followed the majority of courts in other states in finding that, "[B]enefits which actually compensate for disability are not classified as marital property because such benefits are personal to the spouse who receives them and compensate for loss of good health and replace lost earning capacity." *Id.* at 417.

In 2000, and contrary to the holding in *Gragg*, the Tennessee General Assembly amended Tennessee Code Annotated section 36-4-121(b)(1)(C), to include, as *marital* property,

> . . . **recovery in** personal injury, workers' compensation, **social security disability actions**, and **other similar actions for the following: wages lost during the marriage**, reimbursement for medical bills incurred and paid with marital property, and property damage to marital property.

Tenn. Code Ann. § 36-4-121(b)(1)(C) (emphasis added); *see also **Franklin v. DeKlein-Franklin***, No. E2007-00577-COA-R3-CV, 2008 WL 1901113, at *18 (Tenn. Ct. App. Apr. 30, 2008). Accordingly, since 2000, our statutory law has provided that disability payments received as compensation for lost wages *during the marriage* are considered marital property. *See also **Franklin***, 2008 WL 1901113, at *19 (finding that the husband's disability insurance proceeds represented recovery for income lost during the marriage and were marital property subject to division). Any *future* lost wages remain a party's separate property. *See* Tenn. Code Ann. § 36-4-121(b)(2)(E). In this regard, Husband's reliance on *Gragg* is misplaced.

Applying the foregoing statutory definition to the evidence presented here, Husband testified that he was released from his employment in June 2016 due to his numerous health

---

[9] Wife does not dispute the trial court's equitable division of this asset.

issues. Shortly thereafter, Husband filed for private disability benefits to replace his lost wages. According to Husband's testimony, although his disability benefits were denied several times, he ultimately received his first disability payment in January 2019. Husband further testified that he received $78,000.00 in private disability payments through April 2019. Importantly, although the parties were separated when Husband applied for and received disability payments, they were still married at that time. Therefore, because Husband's disability payments replaced his lost wages during the marriage, they are considered marital property under Tennessee Code Annotated section 36-4-121(b)(1)(C); *see also* **Franklin**, 2008 WL 1901113, at *19. Therefore, we affirm the trial court's classification of $78,000.00 of Husband's disability benefits as marital property.

### 5. John Deere Tractor

Husband appeals the trial court's characterization of a John Deere tractor as marital property. As an initial matter, it is undisputed that Wife purchased the tractor during the marriage; accordingly, it is presumed to be marital property. Tenn. Code Ann. § 36-4-121(b)(1)(A). However, Husband argues the tractor is his separate property because Wife gifted it to him in October 2002. *See* Tenn. Code Ann. § 36-4-121(b)(2)(D) (Separate property includes "[p]roperty acquired by a spouse at any time by gift . . . ."). As the party alleging that property acquired during the marriage was his separate property, Husband had the burden of proof at trial. *See* **Bewick**, 2017 WL 568544, at *7 (citing **Owens**, 241 S.W.3d at 485-86).

From our review of the record, we conclude that Husband failed to provide any evidence that Wife gifted him the tractor. Rather, as support for his argument, Husband cites to a portion of Wife's trial testimony. However, after review this portion of the testimony in context, we conclude that it does not, in fact, support Husband's argument. When asked if she purchased the tractor for Husband, Wife testified: "I didn't purchase it for [him]. I purchased it for us to take care of the farm with." While Wife admitted that the purchase of the tractor was a surprise to Husband, she never testified that she purchased it as a "surprise," i.e., a gift, for him.

Husband also alleges that "Wife even used the word 'gift' to describe her purchase of the tractor." Husband's support for this statement is trial exhibit 107, which appears to be a portion of *Husband's* response to Wife's interrogatories that was copied and pasted into a new document. The relevant language provides: "The John Deere 6420 90hp cab tractor was a gift from [Wife] to [Husband]. [Wife] financed the purchase of the tractor through John Deere. [Wife] paid the first payments for the tractor totaling approximately $18,000.00 and then [Husband] paid the remaining balance . . . ." This statement was made by Husband in his answer to Wife's interrogatories, and it is Husband who used the word "gift" to describe Wife's purchase of the tractor. His categorization of the tractor as a "gift" does not make it so in the absence of corroborating proof. In fact, Husband's statement that the parties shared the cost of the tractor provides evidence that the tractor was marital

property.

Finally, Husband cites testimony from both parties that: (1) the tractor was one of only two pieces of farm equipment that Wife purchased; (2) Husband paid $25,000.00 toward the total price of the tractor; and (3) Wife was not an expert at valuing farm equipment. While these statements may be true, they do not support Husband's argument that the tractor was a gift. The fact that the tractor was only one of two equipment purchases Wife made and the fact that Wife was not an expert in farm equipment are simply not relevant to the question of whether the tractor is marital property. However, the fact that Husband contributed $25,000.00 toward the purchase of the tractor is germane to the inquiry and supports the trial court's finding that this asset is marital property.

### 6. StarCraft Boat

Finally, Husband disputes the trial court's characterization of the StarCraft boat as marital property. As set out in his brief, Husband's entire argument concerning this asset is:

> Husband traded pre-marital items for the StartCraft [sic] boat and traced his expenditure of separate property for this asset purchased during marriage. The value of the StarCraft boat should, therefore, be deducted from the value of the marital estate and awarded to Husband as his separate property.

Again, Husband's failure to comply with the rules of appellate procedure and the rules of this Court preclude our review of this question.

As discussed above, Tennessee Rule of Appellate Procedure 27(a)(7)(A) provides that an appellant's brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, **with citations to the authorities and appropriate references to the record** . . . relied on." Tenn. R. App. P. 27(a)(7)(A) (emphasis added). In making his "argument," Husband fails to cite any references to the record as required by Rule 27(a)(7)(A) of the Tennessee Rules of Appellate Procedure. *See also* Tenn. R. Ct. App. 6(b) ("No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded."). Furthermore, although Husband cites some authority under the initial "Argument" section of his brief, he provides no law regarding how courts trace personal property. Husband's only discussion of tracing involves tracing monetary funds that are withdrawn from bank accounts, which is not relevant to the issues raised in this case. "This [C]ourt has repeatedly held that a party's failure to cite authority for its arguments or to argue the issues in the body of its brief constitute a waiver on appeal."

***Forbess v. Forbess***, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011) (citing ***Newcomb v. Kohler Co.***, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (failure "to cite to any authority or to construct an argument regarding [a] position on appeal" constitutes a waiver of the issue); ***Bean v. Bean***, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.")). As this Court has previously stated:

> "[T]his Court is not charged with the responsibility of scouring the appellate record for any reversible error the trial court may have committed." [***Owen***, 2011 WL 6777014, at *4]. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." ***Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.***, 301 S.W.3d 603, 615 (Tenn. 2010).

***Clayton***, 2015 WL 757240, at *2-3. Here, Husband has "merely construct[ed] . . . a skeletal argument" that the StarCraft boat is his separate property. ***Sneed***, 301 S.W.3d at 615. The issue is waived, and we affirm the trial court's classification of the boat as marital property.

## B. Equitable Division of Marital Estate

Turning to the trial court's division of the marital estate, as noted above, courts may only divide marital property, and it must be divided equitably, without regard to fault, and based on the relevant statutory factors, discussed, *infra*. *See* Tenn. Code Ann. § 36-4-121(a)(1). "A division of marital property in an equitable manner does not require that the property be divided equally." ***Luplow***, 450 S.W.3d at 109-10. Trial courts are given "wide latitude in fashioning an equitable division of marital property," and appellate courts will defer to the trial court's division "unless their decisions are inconsistent with the factors in [the statute] or are not supported by the preponderance of the evidence." ***Brown v. Brown***, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994) (citing ***Fisher v. Fisher***, 648 S.W.2d 244, 246 (Tenn. 1983) and ***Barnhill v. Barnhill***, 826 S.W.2d 443, 449-50 (Tenn. Ct. App. 1991)).

On appeal, Husband first argues that a true, equitable division of the parties' marital estate is one that honors the parties' alleged agreement to keep all assets and debts separate. We have previously discussed this argument above and will not revisit it substantively here. There is simply no authority in Tennessee law to support Husband's argument, and we are not persuaded by it.

## 1. Dissipation

As an initial matter, we address Husband's argument that the trial court disregarded Wife's dissipation of marital assets when it divided the marital estate. A spouse's

dissipation of assets is "[a]mong the factors that courts may consider when fashioning an equitable division of a marital estate . . . ." *Altman v. Altman*, 181 S.W.3d 676, 681 (Tenn. Ct. App. 2005); *see* Tenn. Code Ann. § 36-4-121(c)(5). Tennessee Code Annotated section 36-4-121(c)(5)(B) defines dissipation of assets as "wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed." Tenn. Code Ann. § 36-4-121(c)(5)(B). The Tennessee Supreme Court has explained:

> Whether dissipation has occurred depends on the facts of the particular case. . . . Dissipation of marital property occurs when one spouse wastes marital property and thereby reduces the marital property available for equitable distribution. Dissipation typically refers to the use of funds after a marriage is irretrievably broken, is made for a purpose unrelated to the marriage, and is often intended to hide, deplete, or divert marital property. In determining whether dissipation has occurred, trial courts must distinguish between dissipation and discretionary spending. Discretionary spending might be ill-advised, but unlike dissipation, discretionary spending is typical of the parties' expenditures throughout the course of the marriage.

*Larsen-Ball v. Ball*, 301 S.W.3d 228, 235 (Tenn. 2010) (quotation marks and citations omitted). "The concept of dissipation is based on waste" and it "involves intentional or purposeful conduct" by the spouse dissipating marital assets. *Altman*, 181 S.W.3d at 681-82 (internal citations omitted).

On appeal, Husband argues that Wife dissipated marital assets by: (1) totaling her vehicle after she allegedly allowed the insurance coverage to lapse, thus negating any recovery; (2) leaving her doors unlocked, which resulted in the theft of $60,000.00 of jewelry; (3) her drug addiction; (4) gifts and payments to/on behalf of her family; and (5) her intentional unemployment or voluntary underemployment. As the spouse alleging dissipation, Husband carried the initial burden of proof by a preponderance of the evidence. *Larsen-Ball*, 301 S.W.3d at 235.

### a. Automobile Accident and Jewelry Theft

We first address Husband's dissipation arguments concerning Wife's automobile accident and jewelry theft. Regarding the automobile accident, Wife testified that she accidentally crashed her car into a ditch while driving on "bald tires." She further testified that the insurance on the vehicle never lapsed. Rather, she explained that she had decreased the coverage to include only liability due to the fact that the vehicle was paid for and not worth much money.

Concerning the theft of her jewelry, Wife admitted that she had left the doors to her

home unlocked at the time the jewelry was stolen. She also testified that, although she filed a police report, only one pair of earrings was recovered. Notably, Husband failed to offer any evidence, other than his own assertions, to contest Wife's testimony that the car accident, the decision regarding the car insurance, and her failure to secure her doors were anything other than ordinary mistakes brought to light in hindsight. There is simply no evidence that Wife made any of these decisions for the purpose of depleting the marital estate. *See Larsen-Ball*, 301 S.W.3d at 235; *Altman*, 181 S.W.3d at 681-82.

### b. Wife's Drug Addiction

Husband next alleges that Wife dissipated marital assets through her drug addiction, but he fails to provide any specific evidence or cogent argument on the subject. Rather, Husband focuses his appellate argument on the trial court's oral findings that it did not "believe that [Wife] chose to be an addict any more than [Husband] chose to crash [a plane]," and that Husband's argument concerning Wife's dissipation was "based on speculation." Husband's entire argument on appeal is that the trial court's comparison of Wife's addiction to Husband's accident was "poor," and "factually unsupported," yet the problem lies not in the trial court's analogy but in the fact that Husband failed to provide any evidence to support his allegation that Wife dissipated marital assets through her drug addiction.

As discussed, *supra*, "[d]issipation typically refers to the use of funds after a marriage is irretrievably broken . . . and is often intended to hide, deplete, or divert marital property." *Larsen-Ball*, 301 S.W.3d at 235. While Husband's allegations that "Wife became addicted to pills over the years, lost her job, wrecked vehicles . . . , and emptied Husband's pill medicine and replaced the same" are all supported by evidence, Husband fails to connect these facts to his dissipation argument. For example, Husband provides no evidence concerning whether Wife used marital funds to purchase drugs in furtherance of her addiction. Furthermore, as Wife testified, and as the trial court found, Wife's addiction began only a few years into the parties' marriage, and Husband was aware of her addiction by 2008 *at the latest*. Yet, the parties remained married during this time and did not separate until 2014. Accordingly, the marriage was not yet "irretrievably broken" when Wife was in her addiction. *See Larsen-Ball*, 301 S.W.3d at 235. Given the foregoing, we affirm the trial court's finding that Husband failed to meet his burden to show that Wife's drug addiction dissipated marital assets.

### c. Gifts and Payments to/on Behalf of Family

Husband also claims that "Wife dissipated property through gifts and payments to her family, which shows she was intentionally devaluing the marital estate." On appeal, Husband specifically alleges that Wife dissipated assets when she: (1) obtained a loan for $13,000.00 to cover the cost of renovations on the Alabama home; (2) paid off her sister's $40,000.00 loan from money in Wife's savings account; and (3) paid her sister's car note.

- 25 -

Husband again fails to cite to any trial testimony or trial exhibits that support his argument. Furthermore, he fails to show how these allegations, even if true, demonstrate Wife's dissipation of marital assets. *See Larsen-Ball*, 301 S.W.3d at 235; *Altman*, 181 S.W.3d at 681-82.

From our review, we glean that the basis of Husband's dissipation claims rests on trial exhibit 93. In trial exhibit 93, Husband listed twelve alleged "sources" of Wife's dissipation (totaling over $490,000.00). However, notably absent from this list is any mention of Wife's $13,000.00 loan, the satisfaction of her sister's $40,000.00 loan, or the payment of her sister's car note, on which Husband rests his appellate argument. Instead, through exhibit 93, Husband alleged that Wife dissipated "$62,700.00 + $25,000.00" in assets in 2013 through an "[e]arly withdrawal from [a] retirement account to fund family/purchase property in Alabama." The record does not support this allegation. As an initial matter, the record shows that Wife moved to Alabama in 2017, which was four years after Husband alleges she withdrew retirement funds to "purchase property in Alabama." However, the record shows that Wife twice withdrew funds from her marital retirement accounts to pay for *living expenses* after she moved to Alabama. Specifically, Wife testified that she withdrew $25,000.00 in April 2017 for living expenses because she was afraid she was running out of money and would be unable to find employment in Alabama. Wife also testified that she withdrew an additional $65,000.00 from a retirement account in February 2019 because she was not earning sufficient income to cover her expenses, which included over $35,000.00 in attorney's fees. Wife entered bank statements into evidence, which corroborate her testimony. Wife also testified that she did not remove $62,700.00 in 2013.

Importantly, the trial court accounted for Wife's removal of the $25,000.00 and the $65,000.00 (for a total of $90,000.00) in its division of marital property. Specifically, the trial court found that Wife had removed $90,000.00 in marital property during the course of litigation, and it credited Husband with an offset for one-half of that amount, or $45,000.00. Neither party alleges that this was error.

We turn to briefly address Husband's argument that Wife "failed to preserve [her] investment [(in the Alabama house)] by allowing [her sister] to live [in it] rent-free." According to the record, Wife and her sister lived together in Alabama while both were in the process of divorce. After Wife purchased the house from her sister, Wife allowed her sister to continue to live in it, rent-free. To the extent Husband argues Wife dissipated this asset by allowing her sister to live in it without paying rent, we conclude she did not. Wife's decision to forego rent from her sister, does not negate the fact that she preserved the asset. The record shows that Wife continued to make mortgage payments during all relevant times. In continuing to build equity, Wife clearly did not dissipate the asset.

Given the limited proof concerning Wife's loan obligations and/or her alleged gifts to family members, we cannot conclude that the trial court erred in awarding Husband a

$45,000.00 credit for Wife's removal of marital funds from her retirement accounts. Furthermore, in light of Wife's testimony, we cannot conclude that Wife's use of her retirement funds to satisfy her living expenses equates to her intentional waste of marital assets. Rather, given Wife's limited employment opportunities, it is more likely that these funds provided necessary support for Wife during the pendency of the divorce.

### d. Wife's Intentional Unemployment or Voluntary Underemployment

Finally, Husband argues that "Wife declined to work to intentionally devalue the marital estate." This allegation is wholly unsupported by the evidence. As discussed, *supra*, since Wife's arrest for theft of narcotics and her admitted drug abuse, she has been unable to find consistent, full-time employment as a pharmacist. Although she obtained full-time employment after her rehabilitation, the independent pharmacy that employed her filed bankruptcy, and, as a direct result, had to terminate Wife's employment. Since that time, Wife has been able to find employment only as a relief pharmacist, working a few shifts per month. Wife's employment woes are not the result of her desire not to work or to work only intermittently and do not evince an intention, on her part, to dissipate the marital estate. *See Larsen-Ball*, 301 S.W.3d at 235; *Altman*, 181 S.W.3d at 681-82.

### 2. Statutory Factors

Husband's final argument appears to be that the trial court "failed to apply [the statute] to the facts of the case." However, on review, it seems that the gravamen of Husband's argument involves the trial court's actual findings and not its failure to consider the relevant statutory factors, which are:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

\*\*\*

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(B) For purposes of this subdivision (c)(5), dissipation of assets means

- 27 -

wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

*\*\**

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c).

In dividing the marital estate, it is clear that the trial court considered and analyzed these statutory factors. For example, the trial court found that the parties were married approximately 19 years, but lived together only 14 of those years due to their separation in October 2014. *See* Tenn. Code Ann. § 36-4-121(c)(1). The trial court also found that, although Wife suffered health issues during the marriage, at the time of trial, there was no evidence that she was disabled or otherwise unable to work. Despite her good physical health, the trial court found that Wife never recovered her ability to earn a salary similar to what she received before her arrest and rehabilitation. *See* Tenn. Code Ann. § 36-4-121(c)(2). The record supports these findings. The record also supports the trial court's findings concerning Husband, specifically that he had not had much gainful employment after 2006 due to his injuries. *See* Tenn. Code Ann. § 36-4-121(c)(2). Similarly, the record supports the trial court's finding that "both parties' incomes are somewhat limited" because: (1) Husband is unlikely to obtain future employment due to his disability; and (2) although Wife is able to work, it is unlikely she will ever regain employment similar to what she had before her termination from employment in 2008. *See* Tenn. Code Ann. § 36-4-121(c)(4). Likewise, the record supports the trial court's finding that the parties divided most household costs equally and both parties contributed financially to the marriage. *See* Tenn. Code Ann. § 36-4-121(c)(5)(A). Furthermore, as the trial court found and as the record provides, both Husband and Wife had considerable funds in separate retirement accounts as well as separate real property at the time of divorce. *See* Tenn. Code Ann. § 36-4-121(c)(6). The trial court also found that the parties entered the marriage with little debt and left the same way. Indeed, upon review of the record, it is clear that Wife's

only debt is the mortgage on the Alabama home, and Husband's sole debt is from minimal medical bills. *See* Tenn. Code Ann. § 36-4-121(c)(7).

The trial court correctly noted that, after the divorce, "[t]he parties are basically in the same position [as when they began the marriage] except that they've had some changes in employment and also changes in health in a certain way." *See* Tenn. Code Ann. § 36-4-121(c)(7); Tenn. Code Ann. § 36-4-121(c)(8). The record also supports the trial court's finding that "the parties are on relatively close-to-equal footing and have been maintaining their households independently since they separated in 2014." *See* Tenn. Code Ann. § 36-4-121(c)(8). Furthermore, as found by the trial court, and as supported by the evidence in the record, the parties' social security benefits were "within just a couple hundred dollars of one another." *See* Tenn. Code Ann. § 36-4-121(c)(10). In short, the record supports the trial court's finding that the parties acted as a team during the marriage with both parties benefitting from their joint efforts, and that, despite their individual health complications during the marriage, the parties were on almost equal footing at the time of divorce. *See* Tenn. Code Ann. § 36-4-121(c)(11). From our review, it is clear that the trial court applied the requisite statutory factors and made the necessary findings when it divided the marital estate. As such, we conclude the trial court's division of the marital estate is equitable and supported by the record. Accordingly, we affirm the trial court's final order.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's final order. The case is remanded for such further proceedings as are necessary and consistent with this opinion. Costs of the appeal are assessed to the Appellant, Lester Dale McCartney, for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE